UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 10-4966(DSD/TNL)

C.H. Robinson Worldwide, Inc.,
C.H. Robinson Company, Inc.,
and C.H. Robinson Company,

      Plaintiffs,

v.                                     **ORDER**

George Lobrano, Jr.,

      Defendant.

      Donald Chance Mark, Jr., Esq., Peter A.T. Carlson, Esq., Shannon M. McDonough, Esq. and Fafinski, Mark & Johnson, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, counsel for plaintiffs.

      William Z. Pentelovitch, Esq., Sarah A. Horstman, Esq., and Maslon, Edelman, Borman & Brand, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402 and Michael D. Lowe, Esq., S. Price Barker, Esq. and Cook, Yancey, King & Galloway, P.O. Box 22260, Shreveport, LA 71120, counsel for defendant.

This matter is before the court upon the motion to dismiss or transfer and motion for sanctions and attorneys' fees by defendant George Lobrano, Jr. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion to dismiss and denies the motion for sanctions and attorneys' fees.

**BACKGROUND**

This dispute arises out of an employment contract between Lobrano and his former employer, plaintiffs C.H. Robinson Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company (collectively, C.H. Robinson).  In November 2005, Lobrano and C.H. Robinson executed an agreement entitled "C.H. Robinson Worldwide, Inc. and Subsidiaries Management-Employee Agreement" (Employment Agreement).[1]  Am. Compl. Ex. A, ECF No. 25.  The Employment Agreement includes several restrictive covenants.  See Id. ¶¶ 18-21.  The Employment Agreement also provides that Lobrano "shall be eligible to participate in Employer's 1997 Omnibus Stock Plan and any successor plans" and that the "nature and amount of any equity grants ... shall be determined in the sole discretion of" C.H. Robinson.  Id. § 4.04.

In September 2010, C.H. Robinson transferred Lobrano from a management position to a position as regional sales representative. Lobrano Aff. ¶ 7.  On October 27, 2010, Lobrano resigned.  Am. Compl. ¶ 31.  In November 2010, Lobrano sued C.H. Robinson in Louisiana state court seeking a declaratory judgment that the restrictive convenants in the Employment Agreement were null, void and unenforceable under Louisiana law (Louisiana action).  Id. ¶ 35.  On November 30, 2010, C.H. Robinson removed to the United

---

[1] C.H. Robinson refers to this agreement as the "Key Employee Agreement."

States District Court for the Western District of Louisiana. <u>Id.</u> ¶ 37. On December 10, 2010, Lobrano moved for expedited summary judgment. <u>Id.</u> ¶ 38. The Louisiana court denied the motion to expedite and scheduled oral argument for January 25, 2011.

On December 21, 2010, C.H. Robinson filed its answer in the Louisiana action, asserting eight affirmative defenses, including that "[t]he terms, conditions and provisions of the agreements and other documents in any way related to or associated with the obligations of [Lobrano] to [C.H. Robinson], including, without limitation, the Key Employee Agreement ... are specifically and affirmatively pled herein, ... which ... act to bar or limit the claims asserted by [Lobrano]." Lowe Decl. Ex. A. C.H. Robinson asserted no counterclaims.

Instead, that same day, C.H. Robinson filed a parallel action against Lobrano in Minnesota state court alleging breach of the Employment Agreement and anticipatory repudiation, and seeking damages, injunctive relief, an anti-suit injunction, liquidated damages, attorneys' fees and costs, and pre-judgment interest (Minnesota action). <u>See</u> Compl., ECF No. 1. On December 23, 2010, C.H. Robinson scheduled a hearing for a temporary restraining order enjoining Lobrano from pursuing the Louisiana action. Lobrano removed to this court and filed a motion to dismiss, stay or transfer pursuant to the first-filed rule and 28 U.S.C. §§ 1404(a) and 1406(a). <u>See</u> ECF Nos. 2-5; <u>see also</u> Am. Compl. ¶ 40. On

3

December 29, 2010, C.H. Robinson moved for a preliminary injunction in the Minnesota action. See ECF No.6; see also Am. Compl. ¶ 41. The court scheduled oral argument for January 21, 2011.

On January 7, 2011, the District of Louisiana granted Lobrano's motion for summary judgment; determined that Louisiana law applied to the Employment Agreement and that the restrictive covenants were null, void, and unenforceable under Louisiana law; and entered final judgment (Louisiana judgment).[2] Am. Compl. ¶ 42; id. Ex. E, at 4-9; id. Ex. D, at 2. On January 13, 2011, Lobrano amended his motion to dismiss or transfer, based on the Louisiana judgment, by adding a request to dismiss pursuant to the Full Faith and Credit Clause and res judicata. See ECF Nos. 19-23.

On January 18, 2011, C.H. Robinson amended its complaint in the Minnesota action, claiming failure of consideration, mutual mistake, frustration of purpose, unjust enrichment and quantum meruit, and seeking declaratory relief, money damages, return of the restricted shares, attorneys' fees and costs, and pre-judgment interest. Each of the amended claims seeks to recover stock granted to Lobrano because the restrictive covenants in the Employment Agreement are null and void.

On February 1, 2011, Lobrano again amended his motion to dismiss or transfer in response to C.H. Robinson's amended

---

[2] C.H. Robinson did not file a notice of appeal of the Louisiana judgment, and the deadline to do so has passed. See Lowe Decl. ¶¶ 4-5; id. Ex. B.

4

complaint. On March 14, 2011, Lobrano moved for sanctions and attorneys' fees. See ECF No. 40. The court now considers the motions.

**DISCUSSION**

**I.   Rule 12(b)(6) standard**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court may consider materials "that are part of the

public record," Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and matters "necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003). In the present action, the court considers the Employment Agreement, the Louisiana judgment and affidavits.

## II. Res Judicata

The effect of a decision rendered by a federal court sitting in diversity is determined by "the law that would be applied by state courts in the State in which the federal diversity court sits." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001). As a result, the parties agree that the court applies Louisiana law to determine the res judicata effect of the Louisiana judgment on the Minnesota action. See Austin v. Super Valu Stores, Inc., 31 F.3d 615, 618 (8th Cir. 1994). The Louisiana res judicata statute provides, in pertinent part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment....
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and

>  determined if its determination was essential
>  to the judgment.

La. Rev. Stat. Ann. § 13:4231. Therefore, a second action is precluded when (1) the judgment in the first suit is valid; (2) the judgment in the first suit is final; (3) the parties are the same; (4) the causes of action asserted in the second suit existed at the time of final judgment in the first suit; and (5) the causes of action asserted in the second suit arose out of the same transaction or occurrence that was the subject matter of the first suit.[3] See Allied Van Lines, Inc. v. Fairfield Ins. Co., 591 F. Supp. 2d 852, 855 (E.D. La. 2008) (citation omitted); Wooley v. State Farm Fire & Cas. Ins. Co., 893 So. 2d 746, 771 (La. 2005).

C.H. Robinson concedes that the judgment in the first suit is valid and final and that the parties are the same. See Pl.'s Mem. Opp'n 10. Accordingly, the court considers only the fourth and fifth elements.

**A.   Same Transaction or Occurrence**

In evaluating a res judicata claim, the Louisiana Supreme Court "considers the chief inquiry to be whether the second action asserts a cause of action which arises out of the transaction or

---

[3] Section 13:4231 specifically bars "any issue actually litigated" in the first suit. La. Rev. Stat. Ann. § 13:4231(3). This language has been interpreted by Louisiana courts to include issues that could have been litigated in the first suit. See, e.g., Allied Van Lines, Inc. v. Fairfield Ins. Co., 591 F. Supp. 2d 852, 855 (E.D. La. 2008) (reciting the elements of a res judicata claim). The parties agree that the elements set forth in Allied Van Lines determine whether the instant claims are barred.

occurrence that was the subject matter of the first action." Chevron U.S.A., Inc. v. State, 993 So. 2d 187, 194 (La. 2008) (citation and internal quotation marks omitted). "Whether a cause of action arises out of the same transaction or occurrence is determined by an examination of the facts underlying the event in dispute." Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, 872 So. 2d 1147, 1152-53 (La. Ct. App. 2004).

The facts underlying the Louisiana and Minnesota actions are virtually identical. In the Louisiana action, Lobrano claimed that restrictive covenants in the Employment Agreement were illegal and void. In the Minnesota action, C.H. Robinson claims that the Employment Agreement is void without valid restrictive covenants. The Employment Agreement and the validity of the restrictive covenants give rise to both disputes.

Moreover, this element is satisfied where, as here, the causes of action in the first and second suit arise from the same contract. See Hy-Octane Invs., Ltd v. G & B Oil Prods., Inc., 702 So. 2d 1057, 1060-61 (La. Ct. App. 1997) ("All logically related events entitling a person to institute legal action against another generally are regarded as comprising a 'transaction or occurrence.'" (citation omitted)). C.H. Robinson argues that its claims do not arise from the Employment Agreement but from three separate grants of restricted stock to Lobrano in 2005, 2008 and 2009. See Pl.'s Mem. Opp'n 11, 18. A plain reading of the amended

complaint, however, identifies the Employment Agreement as the contract giving rise to the grant of restricted stock and the claims at issue, and the Employment Agreement is central to each of the amended claims. See Travcal Props., LLC v. Logan, 49 So. 3d 466, 470 (La. Ct. App. 2010) (res judicata applies where "the two suits at issue each find their basis rooted in the interpretation of the ... operating agreement").[4]  Under Louisiana law,[5] C.H. Robinson's claims arise out of the same transaction as the claims alleged in the Louisiana action, and are barred under res judicata.

Finally, in its answer in the Louisiana action, C.H. Robinson specifically invoked as an affirmative defense all agreements "in any way related to or associated with" Lobrano's obligations under the Employment Agreement that "bar or limit" Lobrano's claims. Lowe Decl. Ex. A.  The restricted stock agreements are related to the Employment Agreement.  Under Louisiana law, res judicata bars

---

[4] C.H. Robinson claims that Travcal is distinguishable because it involved two lawsuits in two different Louisiana parishes. See Pl.'s Mem. Opp'n 17-18.  This distinction, however, is irrelevant to Travcal's holding, which relied on the fact that the two lawsuits involved the same contract.  See Travcal, 49 So. 3d at 471.

[5] C.H. Robinson cites three inapposite cases in support of its argument.  Borsheim v. O & J Props., 481 N.W.2d 590 (N.D. 1992) applies North Dakota law.  Rimkus Consulting Grp., Inc. v. Cammarata, 257 F.R.D. 127 (S.D. Tex. 2009) involved choice-of-law issues and a claim that restrictive covenants are valid in Texas despite the holding of a Louisiana court.  The validity of the restrictive covenants is not at issue in this action.  Hilb Rogal & Hobbs Co. v. Siech, No. HHDCVX04044034621A, 2010 WL 1050540, at *5-6 (Conn. Super. Ct. Feb. 16, 2010) also involved the enforceability of restrictive covenants and choice-of-law issues.

a defendant from asserting in a second action a claim already pleaded as an affirmative defense in a prior action. See Williams v. City of Marksville, 839 So. 2d 1129, 1131-32 (La. Ct. App. 2003). As a result, this element is satisfied.

### B.    Causes of Action Existing at Time of Final Judgment

A cause of action asserted in the second suit which existed at the time of final judgment in the first suit is barred in accordance with "the basic principle underlying the doctrine of res judicata that a plaintiff must assert all of his rights and claim all of his remedies arising out of the transaction or occurrence." La. Rev. Stat. Ann. § 13:4231, cmt. e.  C.H. Robinson argues that its amended claims for failure of consideration were not ripe until the Louisiana court declared the Employment Agreement's restrictive covenants void.  The court disagrees.

"Ripeness doctrine reflects the determination that courts should decide only a real, substantial controversy, not a mere hypothetical question."  13B Charles Alan Wright et al., Federal Practice & Procedure § 3532.2 (3d ed.) (citation and internal quotation marks omitted).  There is no precise test to determine ripeness. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297 (1979).  "The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract."  Id. at 298; see also

La. Dep't of Agric. & Forestry v. La. R.R. Ass'n, Civ. No. 09-996, 2010 WL 4393899, at *5 (M.D. La. Oct. 1, 2010) ("The doctrine of ripeness distinguishes matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."). "[O]ne does not have to await the consummation of threatened injury" for a claim to be ripe. Babbitt, 442 U.S. at 298 (citation omitted). "If the injury is certainly impending, that is enough." Id. (citation omitted).

In the Louisiana action, Lobrano challenged the legality of the restrictive covenants and asked the Louisiana court to declare those provisions null, void and unenforceable. C.H. Robinson actively defended the legality of the restrictive covenant provisions. Therefore, at the time of the Louisiana action, Lobrano and C.H. Robinson had adverse legal interests in the nullification of the restrictive covenants and the dispute about the restrictive covenants was definite and concrete. When Lobrano filed his claim challenging the legality of the restrictive covenants, C.H. Robinson's claims arising from the nullification of the restrictive covenants were ripe as there was "a realistic danger of sustaining direct injury as a result" of Lobrano's claims. Id. As a result, claims and injuries arising from the nullification of these provisions were not speculative or hypothetical. Because the amended claims were ripe at the time of the Louisiana action, they existed for purposes of res judicata.

See, e.g., Millet v. Crump, 704 So. 2d 305, 307 (La. Ct. App. 1997) (claim barred where circumstances giving rise to second suit exist at time of first suit).

Moreover, the plain language of the amended complaint indicates that each of C.H. Robinson's amended claims arises from the Employment Agreement and its restrictive covenants, the same contract and exact provisions that Lobrano challenged in the Louisiana action. Under Louisiana law, "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." La. Code Civ. Proc. art. 425.[6]  "[T]he failure to raise a claim that arises from the transaction or occurrence that is the subject matter of the litigation amounts to a waiver of that claim." Westerman v. State Farm Mut. Auto. Ins. Co., 834 So. 2d 445, 448 (La. Ct. App. 1997). The court has already determined that the amended claims arise from the same transaction or occurrence. By failing to raise its own claims arising from the Employment Agreement in the Louisiana action, C.H. Robinson waived those claims.[7]  As a result, this

---

[6] This statute "operates in tandem with the res judicata statutes" and "res judicata is the proper procedural vehicle to enforce La. C.C.P. art. 425's mandate by barring claims that were or could have been litigated in a previous lawsuit." Ward v. State, Dep't of Transp. & Dev. (Office of Highways), 2 So. 3d 1231, 1234 (La. Ct. App. 2009).

[7] For these same reasons, the court determines that C.H. Robinson's amended claims are compulsory counterclaims that should have been asserted in the Louisiana action. See Fed. R. Civ. P.
(continued...)

element is satisfied.  In short, the Federal Rules of Civil Procedure are "construed and administered to secure the just, speedy and inexpensive determination of every action."  Fed. R. Civ. P. 1.  These principles underlie the doctrine of res judicata. As a result, a party is required to bring its claims and counterclaims in a single action.  Here, C.H. Robinson ignored these precepts and brought its related claims in a parallel action in a different forum.[8]  It could have, and should have, brought those claims in the Louisiana action and, therefore, dismissal is warranted.

**III. Attorneys' Fees**

Lobrano seeks attorneys' fees and costs incurred in defending the Minnesota action pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.  Whether sanctions are to be imposed in a properly removed case is a matter of federal law.  See

---

[7](...continued)
13(a).  "A counterclaim will not be denied treatment as a compulsory counterclaim solely because recovery on it depends on the outcome of the main action."  6 Charles Alan Wright, Federal Practice & Procedure § 1411 (3d ed.).  When, as here, a claim existed at the time of the pleading and arises out of the same transaction or occurrence, it is waived if not asserted.  See Fed. R. Civ. P. 13(a).

[8] The procedural history of this case demonstrates C.H. Robinson's repeated attempts to avoid the jurisdiction of the Louisiana court.  For example, in its December 21, 2010, complaint in the Minnesota action, C.H. Robinson asserted claims for breach of the Employment Agreement and anticipatory repudiation. Like the instant claims, these claims were compulsory counterclaims that should have been pleaded in C.H. Robinson's answer in the Louisiana action.

13

King v. Hoover Grp., Inc., 958 F.2d 219, 223 (8th Cir. 1992). Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). Following notice and an opportunity to respond, the court may impose "an appropriate sanction" if it finds a violation of Rule 11(b). Id. R. 11(c)(1). Title 28 U.S.C. § 1927 authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003). "In imposing sanctions under § 1927, the district court must make findings and provide an adequate explanation so that [the Court of Appeals] may review its determination that sanctions were warranted." Id. (citation and internal quotation marks omitted). "In determining

14

whether sanctions are warranted, the court considers whether a reasonable and competent attorney would believe in the merit of [the] argument." R & A Small Engine, Inc. v. Midwest Stihl, Inc., 471 F. Supp. 2d 977, 979 (D. Minn. 2007) (citation and internal quotation marks omitted). The standard under Rule 11 and § 1927 "is whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1009 (8th Cir. 2006) (Rule 11 standard); Tenkku, 348 F.3d at 743 (§ 1927 standard).

Lobrano argues that sanctions are warranted because C.H. Robinson ignored well-established principles of res judicata and its claims are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. The court disagrees. Although the court rejects C.H. Robinson's legal arguments, the arguments are not frivolous or "so baseless as to warrant Rule 11 sanctions." Exec. Air Taxi Corp. v. City of Bismarck, N.D., 518 F.3d 562, 571 (8th Cir. 2008) (citation omitted). C.H. Robinson's arguments, while unsuccessful, are nonetheless colorable. Accordingly, sanctions are not warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 33] is granted; and

2. The motion for sanctions and attorneys' fees [ECF No. 40] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 19, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
